## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ISABELLE ROY, | Case No.   1:19-cv-12103 |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| vs. | **JURY TRIAL DEMANDED** |
| RUDOLPH TECHNOLOGIES, INC., DAVID B. MILLER, JEFFREY A. AUKERMAN, LEO BERLINGHIERI, DANIEL H. BERRY, VITA A. CASSESE, THOMAS G. GREIG, III, MICHAEL P. PLISINSKI, and JOHN R. WHITTEN, | |
| Defendants. | |

Plaintiff Isabelle Roy ("Plaintiff"), by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought by Plaintiff against Rudolph Technologies, Inc. ("Rudolph" or the "Company") and the members of Rudolph's Board of Directors (the "Board" or the "Individual Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Rudolph will merge with Nanometrics Incorporated ("Nanometrics") through Nanometrics' wholly-owned subsidiary PV Equipment Inc. ("Merger

Sub") (the "Proposed Transaction").

2.      On June 24, 2019, Rudolph and Nanometrics issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated June 23, 2019 (the "Merger Agreement").   Pursuant to the terms of the Merger Agreement, each issued and outstanding share of Rudolph common stock will be converted into the right to receive 0.8042 shares of Nanometrics common stock (the "Merger Consideration").   Based on the closing price of Nanometrics common stock on June 21, 2019, the implied value of the Merger Consideration was approximately $27.16 per share.   Upon completion of the Proposed Transaction, Rudolph stockholders, collectively, and Nanometrics stockholders, collectively, will each own 50% of the combined company.

3.      On September 10, 2019, Rudolph filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.   The Proxy Statement, which recommends that Rudolph stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Rudolph's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley").   Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Rudolph's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.   Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction, unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Rudolph is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Rudolph.

9.     Defendant Rudolph is a Delaware corporation with its principal executive offices located at 16 Jonspin Road, Wilmington, Massachusetts 01887.  Rudolph is a worldwide leader in the design, development, manufacture and support of process control tools that perform macro-defect inspections and metrology, lithography systems, and process control analytical software used by semiconductor and advanced packaging device manufacturers.  The Company's common

stock is traded on the New York Stock Exchange under the ticker symbol "RTEC."

10.     Defendant David B. Miller ("Miller") has been Chairman of the Board since August 2018 and a director of the Company since July 2015.

11.     Defendant Jeffrey A. Aukerman ("Aukerman") has been a director of the Company since December 2014.

12.     Defendant Leo Berlinghieri ("Berlinghieri") has been a director of the Company since September 2008.

13.     Defendant Daniel H. Berry ("Berry") has been a director of the Company since October 1998.

14.     Defendant Vita A. Cassese ("Cassese") has been a director of the Company since July 2018.

15.     Defendant Thomas G. Greig, III ("Greig") has been a director of the Company since January 2003.  Defendant Greig previously served as Chairman of the Board from April 2016 to August 2018 and as the Board's Lead Director from January 2013 through March 2016.

16.     Defendant Michael P. Plisinski ("Plisinski") has been Chief Executive Officer ("CEO") and a director of the Company since November 2015.  Defendant Plisinski previously served as the Company's Executive Vice President and Chief Operating Officer since October 2014 and as the Vice President and General Manager, Data Analysis and Review Business Unit since February 2006.

17.     Defendant John R. Whitten ("Whitten") has been a director of the Company since July 2006.

18.     Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

4

## OTHER RELEVANT ENTITIES

19.     Nanometrics is a Delaware corporation with its principal executive offices located at 1550 Buckeye Drive, Milpitas, California 95035.  Nanometrics is a leading provider of advanced, high-performance process control metrology and inspection solutions used primarily in the semiconductor manufacturing industry, as well as in the fabrication of other solid-state devices and components in the optoelectronic, LED and storage industries, and more recently in the industrial, aerospace and scientific research markets.  Nanometrics' common stock is traded on the NASDAQ Global Select Market under the ticker symbol "NANO."

20.     Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Nanometrics.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Proposed Transaction

21.     Rudolph designs, develops, manufactures, and supports process control defect inspection and metrology, advanced packaging lithography, and process control software systems used by microelectronic device manufacturers.  It offers process and yield management solutions used in bare silicon wafer production and processing facilities, and device packaging and test facilities through standalone systems for macro-defect inspection, packaging lithography, probe card test and analysis, and transparent and opaque thin film measurements.  The Company also provides spare parts and software licensing services.  Rudolph markets and sells its products to analog, logic, memory, radio frequency, complimentary metaloxide semiconductor image sensors, microelectromechanical systems, and flat panel display manufacturers in the United States, Taiwan, South Korea, Singapore, Austria, Japan, Germany, and China, as well as other European and Asian countries.  As of December 31, 2018, Rudolph had 651 employees.

22.     On May 6, 2019, the Company announced its first quarter 2019 financial results, including revenue of $60.9 million, near the high end of its prior guidance, and GAAP earnings of $0.24 per share, above the high end of its prior guidance.  In the press release, defendant Plisinski was quoted as stating:

> Rudolph was able to increase our earnings per share by 7% on a non-GAAP basis underscoring the strength of our diversified business model despite slightly lower quarter-over-quarter revenue.  We are pleased with the progress our new products are having in the market and we will continue to invest in areas that both strengthen our position in diversified markets as well as expand into new markets such as wafer manufacturing and lithography.

23.     On June 23, 2019, Morgan Stanley rendered its fairness opinion to the Board and the Board approved the Merger Agreement.  Rudolph and Nanometrics then executed the Merger Agreement.

24.     On June 24, 2019, Rudolph and Nanometrics issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

> Nanometrics Incorporated (NASDAQ: NANO), a leading provider of advanced process control metrology and software analytics, and Rudolph Technologies, Inc. (NYSE: RTEC), a leading provider of semiconductor process control systems, lithography equipment, and software for wafer fabs and advanced packaging facilities, today announced that they have agreed to combine in an all-stock merger of equals transaction. The merged company will be a premier end-to-end metrology, inspection, process control software, and lithography equipment provider for the semiconductor industry and other advanced markets.
>
> Under the terms of the agreement, which was unanimously approved by the Boards of Directors of both companies, Rudolph stockholders will receive 0.8042 shares of Nanometrics common stock for each Rudolph share. Upon completion of the merger, current Nanometrics stockholders will own approximately 50% and current Rudolph stockholders will own approximately 50% of the combined company.
>
> Rudolph CEO Michael Plisinski will serve as Chief Executive Officer and Rudolph CFO Steven Roth will serve as Chief Financial Officer of the combined company, alongside a highly experienced leadership team comprised of executives from both companies. The Board of Directors will be led by Nanometrics director Christopher Seams and will have 12 directors, consisting of six from each existing Board. The

combined company will be headquartered in Wilmington, Massachusetts and will maintain a strong presence at Nanometrics' headquarters in Milpitas, California.

Nanometrics President and Chief Executive Officer, Pierre-Yves Lesaicherre said, "Nanometrics has a long history of innovation in the field of optical metrology, pioneering the use of scatterometry for semiconductor process control. In recent years, we have established a strong position in optical critical dimension metrology, enabling the ramp of advanced technology nodes by each of the major semiconductor manufacturers worldwide. Our merger announced today with Rudolph marks the culmination of our respective businesses' growth, diversification, and increased scale. We believe the combined global support organizations, technology development teams and product portfolio will create a unique, end-to-end solution provider across the entire semiconductor fabrication process. The combined company will be able to provide improved device yield at reduced manufacturing cycle time, supporting the accelerated product life cycles in the semiconductor and other advanced markets."

Rudolph Chief Executive Officer, Michael Plisinski added, "This strategic transaction brings together two successful and complementary teams and product portfolios. Nanometrics' metrology portfolio is a strong strategic fit with Rudolph's current diversified product lines including software, inspection, metrology, and lithography. Our current set of products has already created integrated solutions for the advanced packaging market, and we expect to develop new integrated solutions for customers as we are able to draw from an even larger set of products in the future. Our customers are consolidating and rapidly innovating across the complete value chain from front-end fabrication to packaging. Bringing these two successful and complementary teams together enables us to solve our customers' high-value problems in the years ahead. We look forward to joining forces to leverage our respective strengths and talented teams to benefit all stakeholders."

**Key Strategic and Financial Benefits**

- The merger joins together two highly complementary, leading semiconductor inspection and metrology companies. Investors, customers, employees and all constituents are expected to benefit from:

- Complementary Products: Nanometrics and Rudolph have highly complementary portfolios. By bringing together front-end metrology with inspection solutions, the new company will have the opportunity to offer more comprehensive process control solutions to the world's leading semiconductor device manufacturers. These served markets are also complementary, as the combined product portfolio provides tools and software to customers producing advanced nodes and specialty devices in the front-end along with advanced packaging in the back-end. As customers continue to invest in more advanced process control solutions, the combined

technology portfolio and established channels to these markets is expected to accelerate the ability to serve both front-end and back-end markets.

- Increases Served Markets: Each company currently has a semiconductor industry SAM of at least $1B, with additional SAM expansion opportunities of $400M to $500M per company. The combination is expected to expand the companies' served market opportunity to approximately $3B. With each company's capabilities in their respective served markets, the combination is expected to strengthen the combined team's opportunity to grow their share of the combined SAM and invest in future expansions.

- Global Scale: The combined company will have broader, global scale enabling it to better invest, compete, and provide innovative services to the customer base. The combined company will have worldwide locations and facilities across the U.S., China, Europe, Japan, South Korea, Singapore and Taiwan, including a strong combined team worldwide. Nanometrics and Rudolph had in the aggregate approximately $600 million in revenue and $118 million in operating income based on 2018 results. In addition, at the end of the first calendar quarter, the companies had in the aggregate cash and marketable securities totaling $319 million, working capital of $526 million and no debt.

- Strong Cash Generation: In 2017 and 2018 the companies generated a combined $223 million in cash flows from operating activities. The combination is expected to enhance the free cash flow generation of the combined enterprise, resulting in a stronger cash position to enable strategic capital deployment in order to further increase shareholder value.

- Increased Shareholder Value: The combined company is expected to drive long-term shareholder value through cost synergies and revenue growth opportunities. Annual cost synergies of at least $20 million are expected, primarily from elimination of duplicate public company costs, elimination of redundant facility leases, and other general administration areas. The companies expect additional potential upside from revenue synergies through cross-selling and software modules.

**Timing and Approvals**

The transaction is expected to close in the second half of 2019, subject to the completion of customary closing conditions, including receipt of regulatory approvals, and approval by the stockholders of each company.

**The Proxy Statement Contains Material Misstatements and Omissions**

25.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Rudolph's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

26.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Rudolph's financial advisor, Morgan Stanley.

27.     The Proxy Statement describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Rudolph's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

28.     With respect to Morgan Stanley's *Rudolph Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items underlying unlevered free cash flow; (ii) the financial metric Morgan Stanley applied perpetual growth rates to in order to derive the terminal value, and quantification thereof; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 8.6% to 9.6%; (iv) Rudolph's estimated net cash as of June 30, 2019; (v) the implied terminal multiples resulting from the analysis; and (vi) Rudolph's fully diluted shares outstanding as of June 20, 2019.

29.     With respect to Morgan Stanley's *Nanometrics Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items underlying unlevered free cash flow; (ii) the financial metric Morgan Stanley applied perpetual growth rates to in order to derive the terminal value, and quantification thereof; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.1% to 10.1%; (iv) Nanometrics' estimated net cash as of June 30, 2019; (v) the implied terminal multiples resulting from the analysis; and (vi) Nanometrics' fully diluted shares outstanding as of June 20, 2019.

30.     With respect to Morgan Stanley's *Rudolph Public Trading Comparables Analysis* and *Nanometrics Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Morgan Stanley.

31.     With respect to Morgan Stanley's *Relative Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Morgan Stanley in the analysis; and (ii) the sources thereof.

32.     Without such undisclosed information, Rudolph stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

33.     The omission of this material information renders the statements in the "Opinion of Morgan Stanley, Rudolph's Financial Advisor" and "Rudolph Unaudited Financial Projections"

sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

34.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Rudolph will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

35.     Plaintiff repeats all previous allegations as if set forth in full.

36.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

37.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  The Proxy Statement misrepresented and/or omitted material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Morgan Stanley.  The defendants were at least negligent in filing the Proxy Statement with these

materially false and misleading statements.

38.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

39.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

40.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

41.     Plaintiff repeats all previous allegations as if set forth in full.

42.     The Individual Defendants acted as controlling persons of Rudolph within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Rudolph and participation in or awareness of the Company's operations or intimate knowledge of the statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Rudolph stockholders;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: October 10, 2019

/s/ Mitchell J. Matorin
_____
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, Massachusetts 02482
(781) 453-0100
mmatorin@matorinlaw.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*